UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:12-CR-73 |
| | ) | |
| TRAVIS SCOTT TRENT | ) | |

**REPORT AND RECOMMENDATION**

On August 13, 2010, Detective Richard Kindle of the Sullivan County Sheriffs Office submitted an application to a general sessions court judge of Sullivan County to search the premises of defendant herein for evidence of child pornography. No pornography was found during the resulting search. However, the officer found growing marijuana plants, mushroom spores, and a number of firearms. Defendant ultimately was indicted in this court for manufacturing marijuana; possessing marijuana with the intent to distribute it; possession of firearms by an unlawful user and addict of drugs; and possession of firearms in furtherance of the drug trafficking crimes.

Defendant has filed a motion to suppress any evidence of the drugs and firearms, (Doc. 27), arguing that (1) there was no probable cause to issue a warrant to search defendant's home for evidence of child pornography; and (2) the warrant was defective in several ways, as a result of which the warrant was void and of no effect. That motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. A hearing was held on September 21, 2012.

The affidavit of the affiant, Detective Kindle, speaks for itself, but nevertheless a paraphrased and truncated version is appropriate for purposes of this report and recommendation:

Juliana Perry is the ex-wife of defendant, and she and defendant have a minor daughter. On August 11, 2010, Ms. Perry reported to the Sheriffs Office that her ex-husband, defendant, was sexually abusing their daughter, and that defendant had child pornography on his computer.

Ms. Perry reported that it was her daughter who had complained of her father's actions. The daughter had told her mother that her father had shown her movies of "girls rubbing their butts on boys' privates," and defendant had shown his daughter photographs of naked women on his computer.

The child had been interviewed by Cindy Ketron, a licensed counselor, and the child had repeated to Ms. Ketron her allegations regarding her father's conduct. She stated that her father had hundreds or perhaps even thousands of pictures of "naked girls" on his computer, and that she knew the difference between girls and grown women. The child told Ms. Ketron that she "feels" that her father has a picture of her "privates" on his computer. She also reported to the counselor that she had seen her father naked, and she accurately described a penile erection using anatomical dolls. According to Detective Kindle's affidavit, Ms. Ketron has twenty-three years of experience and had "the utmost confidence in the things that [the child had] disclosed."

Detective Kindle also recited in his affidavit that he had arranged for the child to be

forensically interviewed at the Sullivan County Childrens' Advocacy Center by Amy Bachman, a Forensic Interviewer, and the child reported to Ms. Bachman essentially the same thing she earlier reported to Cindy Ketron. She reiterated to Ms. Bachman that she had seen pictures of naked girls on her father's computer.

Detective Kindle related in his affidavit that the child's mother, Juliana Perry, reported that she had seen pictures of young girls on defendant's computer while they were married (five years earlier), and these were pictures of young girls in panties and "crotch shots" of young girls. Juliana Perry also told Detective Kindle that during her marriage to defendant he frequently visited two internet web sites devoted to child pornography.

**PROBABLE CAUSE**

Defendant describes Detective Kindle's affidavit as a "hodge-podge of allegations." He argues that when each allegation is analyzed separately, it is seen that they do not relate to child pornography, and neither does their combined effect establish probable cause that there was child pornography in defendant's home.

To be sure, the bulk of Detective Kindle's affidavit is directed toward sexual abuse of defendant's child as opposed to his possession of child pornography. Nevertheless, child pornography is prominently mentioned in Detective Kindle's affidavit. The child reported to her mother and to two counselors that she had seen pictures of naked girls on her father's computer. Additionally, the child's mother reported to Detective Kindle that she had seen inappropriate pictures of young girls on defendant's computer when they were married. The daughter's statements, coupled with those of her mother, establish probable cause to believe

3

that defendant possessed child pornography.

Defendant argues that the mother's information was five years old and therefore could not constitute probable cause to believe that defendant's computer *now* contained child pornography. Respectfully, the court disagrees. To be sure, if the information supplied to the issuing judge is too old to constitute probable cause to believe that evidence of a crime will be there when the officers execute the warrant, then the information is "stale," and cannot constitute probable cause. Staleness, however, is not determined by referring to some arbitrary time limitation; rather, it must be decided on a case-by-case basis, taking into account the nature of the crime, the criminal, the place to be searched, and the thing to be seized. *See, e.g., United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). It is common knowledge, at least in judicial circles, that child pornographers tend to retain their pornographic collections, and are extremely reluctant to part with them. Indeed, Detective Kindle so stated in his affidavit. Neither is it likely that aficionados of child pornography will repent of their criminal activity and forever cease their contact with it. In the case of child pornography, information five years old is almost as valid as information five days old. Moreover, the information told to Detective Kindle by the child and the two counselors served to corroborate defendant's current involvement with child pornography.

**DEFECTS IN THE WARRANT**

Defendant asserts that the warrant was over-broad and amounted to a general warrant. Defendant points out that the warrant authorized the executing officer to search for

4

and seize "documents or records concerning or relating to computer programs which can be used to change the normal function of computer systems or attempts to affect the normal function of any computer system." Also the warrant authorized the officer to search for and seize "Data Security Devices." In the same vein, the warrant authorized the officers to search for "programs to run operating systems." This court is constrained to agree with defendant that these descriptions of things to be seized make little or no sense, and would require the executing officer to decide, on the premises and in the midst of the search, just what these items were. That, rather obviously, is inappropriate, since a search warrant must describe with particularity the things to be seized. *See, e.g., Andresen v. Maryland*, 427 U.S. 463-480 (1976). But the fact that some of the items to be seized are described poorly, or even not at all, does not invalidate the entire warrant or the ensuing search. If a warrant is overbroad, the proper remedy is "to sever the overbroad portions of the warrant from those portions that are sufficiently particular," *United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999). The warrant directed the executing officer to search for and seize computer hardware and other data-processing devices, as well as digital storage devices, since all of those very well could contain images of child pornography. These items were described with sufficient particularity. Therefore, the officers lawfully were searching for computers and electronic storage devices. While so engaged, they came upon the growing marijuana plants and the firearms. The illegal and incriminating nature of the marijuana plants were "immediately apparent" to the executing officers and thus were properly seized. *See, Horton v. California*, 496 U.S. 128 (1990). In turn, the discovery of the marijuana made the illegality of the

5

firearms immediately apparent, justifying their warrantless seizure.

Defendant argues that the warrant was invalid *under Tennessee law* because, in contravention of Rule 41 of the Tennessee Rules of Criminal Procedure, it failed to identify the officer to whom the warrant was delivered for execution.

The issuing judge's failure to note on the face of the warrant to whom the warrant was delivered for execution requires suppression in a Tennessee court of all evidence seized thereunder. Indeed, a state court judge suppressed this very same evidence against defendant in an earlier state prosecution. It is clear, however, that if evidence seized under a state search warrant is used in a federal prosecution, the validity of that state search warrant is determined by the requirements of the Fourth Amendment to the United States Constitution, not by state law. *See, United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992). The Fourth Amendment requires only that search warrants be issued upon a showing of probable cause, supported by oath or affirmation, and that the warrant particularly describe the place to be searched and the things to be seized. The procedural requirements of Rule 41 of the Tennessee Rules of Criminal Procedure are not part of the Fourth Amendment, either explicitly or implicitly. If the warrant states probable cause, and if it was issued by a person authorized to do so, then any evidence seized thereunder should not be suppressed in a federal prosecution for a procedural defect notwithstanding that the same evidence would be suppressed in an identical state prosecution, *United States v. Fields*, 978 F.2d 943 (6th Cir. 1992).

**DEFECTS IN EXECUTION**

It is to be recalled that the officers were searching for evidence of child pornography, not drugs or firearms. The growing marijuana plants were found in the crawl space beneath the house. The firearms, and a small amount of plant material, were found in a bedroom closet. As previously pointed out, the officers found no child pornography.

Defendant argues that the officers' invasion of the crawl space beneath the house was beyond the scope of the search authorized by the warrant. He also argues that the firearms were not identified in the warrant, and they were not themselves contraband.

As far as the crawl space and the marijuana growing operation is concerned, it is defendant's argument that an officer would not reasonably expect to find computers or other computer hardware in the crawl space, and therefore the officers' entry into that area was beyond the scope of the warrant. Respectfully, the court disagrees. The warrant directed the officers to search not only for computer hardware, but also for peripheral storage devices, some of which (like flash drives) can be stored or hidden almost anywhere. One could not blithely assume that such peripheral storage devices would not be hidden in a crawl space beneath the house; after all, defendant chose the crawl space beneath the house to grow the marijuana.

As far as the guns are concerned, their illegal status – in other words, their incriminating nature – became manifest when the marijuana was discovered, and were properly seized. To be sure, the jury very well may conclude that defendant did not possess these firearms in furtherance of his drug trafficking, or that he was a drug user or addict. But that begs the question of the admissibility of the evidence concerning the guns; the evidence

7

is admissible and the jury can consider it for whatever it is worth.

It is respectfully recommended that defendant's motion (Doc. 27) be denied.[1]

Respectfully submitted,

              s/ Dennis H. Inman
              United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).